IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GRAHAM B.C. ROMAN**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-1662-KSM** |
| **COUNTY OF CHESTER,** et al., | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                          **November 16, 2023**

Plaintiff Graham B.C. Roman is a pretrial detainee at Chester County Prison ("CCP"),

where he has been incarcerated since August 29, 2021.  He brings claims under 42 U.S.C. § 1983

for violations of his First, Eighth, and Fourteenth Amendment rights against the County of

Chester, multiple prison officials (collectively, the "County Defendants"), PrimeCare Medical,

Inc. (the prison's medical services provider), and Aramark Correctional Services, LLC (the

prison's food services provider).  (*See* Doc. No. 17 at 4–8; Doc. No. 30 at 11.)  As relevant here,

Roman alleges that the County Defendants and PrimeCare have unreasonably denied him access

to mental health services and wrongly refused to place him on M-Block despite an unidentified

psychologist's alleged recommendation that he be moved to a cell on that block.  (*See* Doc. No.

78 at 5–7; *see also id.* at 12 (describing mental health treatment received to date as "punitive").)

Currently before the Court is Roman's fourth motion for a temporary restraining order ("TRO")

or preliminary injunction.  (*Id.*; *see also* Doc. Nos. 11, 24, 49.)  It is unclear what precise remedy

Roman seeks, as he vaguely asks the Court to "direct defendants to find a solution and remedy

that is the least intrusive option to the penological needs and interests [ ]or[ ] to admit or file for

a[n] evaluation at Norristown State Hospital to correctly treat and prevent further harm or death

to plaintiff." (Doc. No. 78 at 12.)  Defendants oppose the motion.  (Doc. Nos. 82–84.)  County

Defendants also ask the Court to bar Roman from submitting any future filings while the case is

stayed.  (Doc. No. 82 at 7–9; *see also* Doc. No. 56 (granting Roman's motion for appointment of

counsel and staying the case while it is referred to the Prisoner Civil Rights Panel).)

## I.

Under Federal Rule of Civil Procedure 65 this court has the power to "grant preliminary

injunctions to enjoin harmful conduct." *ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc.*, 233 F.

Supp. 3d 432, 437 (E.D. Pa. 2017); *see also* Fed. R. Civ. P. 65(a).[1]  Similarly, 18 U.S.C. § 3626

allows the court to grant a preliminary injunction with respect to prison conditions.  18 U.S.C.

§ 3626(a)(2).  "Preliminary injunctive relief is an extraordinary remedy and should be granted

only in limited circumstances." *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793

F.3d 313, 318 (3d Cir. 2015) (quotation marks omitted).  And a prisoner's request for injunctive

relief, in particular, "must 'be viewed with great caution' because of the 'intractable problems of

prison administration.'" *Milhouse v. Fasciana*, 721 F. App'x 109, 111 (3d Cir. 2018) (quoting

*Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

A party seeking a preliminary injunction must present evidence showing:  "(1) a

likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is

denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving

party; and (4) that the public interest favors such relief." *Arrowpoint Cap. Corp.*, 793 F.3d at

318–19 (quotation marks omitted).  If a party fails to establish likelihood of success on the merits

---

[1] Likewise, the court may grant a TRO if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable harm . . . will result to the movant before the adverse party can be heard in opposition . . . ."  Fed. R. Civ. P. 65(b)(1)(A); *see also Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159–60 (3d Cir. 2020).

and irreparable harm—what the Third Circuit has referred to as the "gateway factors" of this test—then the Court need not consider whether all four factors balance in favor of granting preliminary relief. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *see also Arthur Treacher's Franchise Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

## II.

Roman has failed to show that he is likely to suffer immediate, irreparable injury absent a preliminary injunction. "In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d at 653 (3d Cir. 1994). "The requisite feared injury or harm must be irreparable—not merely serious or substantial . . . ." *ASI Bus. Sols., Inc.*, 233 F.Supp.3d at 437 (quotation marks omitted); *see also Scutella*, 2020 WL 571065, at *3 ("[A] court may not grant preliminary injunctive relief unless 'the preliminary injunction is the only way of protecting the plaintiff from harm.'" (quoting *Instant Air Freight Co. v. C.F.A. Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989))). In addition, it is "insufficient if the harm will occur only in the indefinite future"; instead, "the moving party must make a clear showing of *immediate* irreparable harm." *Campbell*, 977 F.2d at 91 (quotation marks omitted).

Roman appears to argue that he will suffer immediate irreparable harm because: (1) the prison's security staff refuses to rehouse him in M-Block despite an unidentified mental health professional ordering his reassignment, and (2) the County and PrimeCare continue to deny and unnecessarily delay medical care for his mental illnesses. (*See* Doc. No. 78 at 6–9; *see also id.* at 9 ("The probability of irreparable harm is imminent 'if' medical treatments are 'not' followed by

3

medical personnel.").)  Neither assertion, however, is supported by the record.

Nowhere in Roman's medical records does a PrimeCare employee recommend that

Roman be placed on M-Block.  Instead, his records from October 20, 2023—the day the

unnamed mental health professional allegedly ordered that Roman be moved to M-Block—show

that the professional who saw Roman directed that he be "return[ed] to his block."  (Doc. No. 83-

1 at 7.)  And when a psychologist met with Roman three days later, she similarly determined that

Roman could "remain housed in his current cell, where he is comfortable."  (*Id.* at 6.)  Finally,

when Roman's disability rights lawyer requested that he be moved to M-Block on October 27,

2023, the Director of Behavioral Health at CCP explained the numerous reasons why he was *not*

recommending that Roman be placed on M-Block:

> 1.  Safety—he is an inmate with significant high-profile charges. As he would most likely be placed on Modd, this would place him amongst inmates with documented impaired judgment and impulsivity. His safety would be harder to guarantee on that block.
>
> 2.  Stability of the block—Mr. Roman's recent behavior has shown to be argumentative and defiant. In contrast, M block has achieved relative stability as of late and his modeling of intentionally defiant behavior may become progressively destabilizing to the block.
>
> 3.  Confidentiality—Mr. Roman has a documented history of desiring confidential and personal space. Given the open bar format of M block, this would be much harder to provide to him. Additionally, his medical records (which he insists on having physical copies of in the facility) are much more accessible to other inmates while on M block.
>
> 4.  Spacing—M block is currently running close to capacity. Traditionally, this block has housed inmates who have difficulty or outright inability to manage in the general population (or less restricted housing). It has always been the goal of mental health to have individuals with serious mental illness housed in a less restrictive and maximally stimulating environment based on their mental health needs. Many of our seriously mentally ill inmates function well on blocks

outside of M block. Mr. Roman has displayed a clear ability to function on another block.

5. Environment—Mr. Roman is considerably higher functioning than most individuals on M block, and he would find appropriate peer-level discourse and activities more difficult to receive.

6. Summary—Mr. Roman has been clear to mental health that his issue is not R block. His frustration has been that he is on restriction. That restriction status is still going to follow him to other blocks. He has integrated into his community on R block and his temporary restriction would be a poor rationale for disrupting this. It has been and will continue to be the recommendation of mental health that Mr. Roman not be moved to M block as his placement on that block presents greater risks to himself and the stability of some of our most vulnerable inmates.

(Doc. No. 83-2 at 2–3.)

The record likewise does not support Roman's assertions that he has been or will be denied necessary medical care in connection with his mental illnesses. To the contrary, Roman's medical records show that he is frequently seen by members of PrimeCare's behavioral health team, including five evaluations in October 2023 alone. (*See generally* Doc. No. 83-1.) And as of his last meeting with a clinician on October 30, 2023, his mental condition was "fair to good and stable," he was "at low risk of harm to himself and others," and he "reported no specific concerns" related to prison staff. (*Id.* at 2.) That record also shows that the clinician scheduled a follow up appointment for Roman on November 30, 2023, which dispels any suggestion that the County and PrimeCare intend to deny Roman mental health services in the future. *See Miller v. Little*, CIVIL ACTION NO. 3:21-cv-01941, 2022 WL 2070282, at *2 (M.D. Pa. June 8, 2022) ("A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." (quotation marks omitted).)

Because Roman has not shown that he will suffer irreparable harm absent preliminary

injunctive relief, his motion is denied. *See Wesley*, 2002 WL 1286898, at *3 ("Plaintiff also

cannot show that he will suffer irreparable harm by the denial of relief. Even though the Plaintiff

claims that he is not receiving adequate treatment for his Hepatitis C and asthma conditions, the

record indicates that these conditions are being treated and are in fact stable.").[2]

## III.

That leaves the County Defendants' request that the Court prohibit Roman from making

future filings while the case is stayed. (Doc. No. 82 at 7–9.)

"[T]he All Writs Act, 28 U.S.C. § 1651, gives the district court the power to issue an

injunction to restrict the filing of meritless pleadings . . . ." *Abdul-Akbar v. Watson*, 901 F.2d

329, 332 (3d Cir. 1990). A pre-filing injunction is most often used to enjoin pro se litigants from

filing future *lawsuits* after a district court "concludes that a litigant has abused the judicial

process by filing frivolous lawsuits and will continue to file such lawsuits unless restrained."

*Gonzalez v. Feiner*, 131 F. App'x 373, 378 (3d Cir. 2005). Nevertheless, the principles

governing this remedy seem to apply equally to a motion to enjoin a litigant from filing

additional frivolous *motions* in a single case. *See Hiles v. Mortgage*, Case No. 1:12-cv-392,

2016 WL 454895, at *4 (S.D. Ohio Feb. 5, 2016) ("Federal courts have both the inherent power

and constitutional obligation to protect their jurisdiction from conduct which impairs their ability

to carry out Article III functions. To achieve these ends, the Sixth Circuit has approved

---

[2] Because Roman is consistently receiving medical care for his mental health, he also has not
shown that he is likely to succeed on the merits of his claims against the County and PrimeCare for
deliberate indifference to serious medical needs. *See Wesley v. Vaughn*, Nos. CIV.A.99–1228, CIV.A.99-
1229, 2002 WL 1286898, at *3 (E.D. Pa. June 4, 2002) ("Plaintiff's dissatisfaction with his medical care
at Graterford does not prove that the defendants acted with deliberate indifference. A disagreement
between the physician and the prisoner regarding the medical diagnosis and treatment does not constitute
deliberate indifference under the Eighth Amendment."); *see also Boring v. Kozakiewicz*, 833 F.3d 468,
471 (3d Cir. 1987) ("Medical malpractice may give rise to a tort claim in a state court but not necessarily
to a constitutional claim.").

enjoining vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings." (citations omitted)).

The Court declines at this time to bar Roman from making additional filings. Although Roman has filed four motions seeking a preliminary injunction, it is only this most recent one that appears to be truly frivolous. (*See* Doc. No. 25 at 7 n.5 (warning prison officials that "if Roman's account is true, a longer delay may qualify as unreasonable or suggest that the delay may be occurring for non-medical reasons"); Doc. No. 58 at 4 ("The Court does, however, reiterate its previous warning to County Defendants that multiple missed appointments or a lengthy delay may be enough to warrant the Court's intervention.").) Moreover, this most recent motion is the only one that Roman filed after the Court stayed the case.

Instead of enjoining Roman, the Court reminds him that: (1) a preliminary injunction is *an extreme form of relief* and should be requested only when there is an *imminent* risk of *irreparable* injury; and (2) this case is stayed, which means absent extreme circumstances, he should not be making any filings in this action until the stay is lifted. Roman is also cautioned that although the Court declines at this time to bar him from making additional filings in this case, the Court is likely to grant the relief requested by County Defendants if Roman continues to file frivolous motions while the case is stayed.

**IV.**

For the reasons discussed above, Roman's motion for a preliminary injunction and TRO is denied. The County Defendants' request that the Court bar Roman from making further filings while the case is stayed is also denied. However, County Defendants may renew their request if Roman continues to file frivolous motions. An appropriate order follows.